```
┌─────────────────────────────────┐
│ USDC-SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC#:                           │
│ DATE FILED: 3/1/2016            │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KARIVA A. HAMILTON,

                Plaintiff,

          v.

FREDERICK COUNTANT JR., ANTHONY
CHU, CATHERINE JACOBSEN, and
WILLIAM F. KEYSER,

                Defendants.

---

No. 13-CV-669 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff, Kariva A. Hamilton, a New York State prisoner and member of the Rastafarian faith, brings this *pro se* action alleging that Defendants Frederick Coutant, Jr., Anthony Chu, Catherine Jacobsen, and William F. Keyser violated his rights to religious liberty and equal protection of the law. Hamilton claims that Defendants, all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), infringed on his statutory and constitutional rights when they seized religious items from the prison chapel, made alterations to the calendar on which the prison listed recognized religious holidays, and refused to provide the cornbread and grape juice required for him to take communion during a Rastafarian holiday. Defendants argue that they are entitled to dismissal of these claims as a matter of law and move for summary judgment on all causes of action. The motion is granted.

## BACKGROUND[1]

In 2011 and 2012, Plaintiff was imprisoned in DOCCS's Sing Sing Correctional Facility in upstate New York where he served as a "Levite," or leader, in the Church of Halie Selassie I, Plaintiff's Rastafarian "mansion," or church. Pl.'s 56.1 Stmt. ¶¶ 1, 6; Pl.'s Dep. 63:9–16. Although Plaintiff is now imprisoned at another facility, he brought this suit to remedy three perceived violations of his rights as a practicing Rastafarian while incarcerated in Sing Sing. *See* Decl. of Kariva A. Hamilton ¶ 1 (hereinafter "Pl.'s Decl.").

First, on September 14, 2011, security staff at Sing Sing conducted a search of the prison chapel "in an effort to locate contraband," Pl.'s 56.1 Stmt. ¶ 1, and "confiscated numerous items from the Rastafarian area of the chapel," *id.* ¶ 2, that Plaintiff contends that "are central and critical to the Rastafarian temple worship," Pl.'s Decl. ¶ 5.[2] In particular, Plaintiff testified that the prison seized candles, pots, frankincense, myrrh, an electric iron, and a computer. Pl.'s Dep. 105:13–15. Prison records reveal that officials also seized a DVD player and "unauthorized movies." Compl. Ex. F. Following the seizure, Plaintiff and other inmates filed grievances. Decl. of Quandera T. Quick ¶ 4.

Second, Plaintiff complains that DOCCS staff "alter[ed], delet[ed], and amend[ed]" the contents of the 2012 religious holiday calendar at Sing Sing (hereinafter the "Religious Holy Day Calendar" or "Calendar"). Pl.'s Mem. 16. On January 10, 2012, Plaintiff and other members of his congregation wrote to Defendant Catherine Jacobson, the then-Acting Deputy Commissioner of DOCCS Program Services, about their objections to the 2012 Calendar. *See* Compl. Ex. A.

---

[1] The following facts, uncontroverted unless otherwise noted, are drawn primarily from Plaintiff's 56.1 statement, Plaintiff's deposition testimony, Plaintiff's declaration, and Plaintiff's memorandum of law. A fact placed into the record by Defendants is cited only where Plaintiff has offered no evidence to refute that fact.

[2] Although none of the Defendants conducted the search, it "was authorize[d] by Superintendent William Keyser." Pl.'s 56.1 Stmt. ¶ 1.

They protested both the removal from the Calendar of the special menu items traditionally served on Rastafarian holidays and the Calendar's references to a specific sect of Rastafarianism to which Plaintiff did not belong. *See* Compl. Ex. A; Pl.'s Dep. 63:23–64:20. To remedy these alleged issues, Plaintiff's church demanded "a chaplain that can give us religious counseling, spiritual guidance, and give the state a better understanding of our practice." Compl. Ex. A. On January 30, 2012, Jacobson responded. *See* Compl. Ex. B. She explained that "efforts are in place to look for a suitable representative and volunteers for the Rastafarian faith group" and directed that all inquiries regarding food be addressed to "the Food Service Administrator at your current facility." *Id.* Plaintiff never filed a grievance regarding his concerns with the Calendar. Pl.'s Mem. 16; Decl. of Quandera T. Quick ¶ 5.

Finally, Plaintiff asserts that his rights were violated when Defendants failed to provide him with cornbread and grape juice on May 5, 2012. Pl.'s Mem. 4. Each year, the members of Plaintiff's congregation celebrate the Rastafarian holiday of Fasika by conducting post-breakfast congregational services after which they consume a Fasika feast. Pl.'s Dep. 56:5–57:22; Pl.'s 56.1 Stmt. 12. The feast includes a meal of rice and vegetables followed by the taking of communion with cornbread and grape juice—a tradition that has endured "within DOCCS for the past 18, 19, maybe 20 years." Pl.'s Dep. 76:25–77:3. Although he identifies no issues with the Fasika celebration in years before or after, Plaintiff did not receive cornbread or grape juice on May 5, 2012. *Id.*

From the start of 2012, Plaintiff was dissatisfied with the prison's facilitation of Fasika. As described above, after learning that the 2012 Calendar did not include a special Fasika menu, Plaintiff and his congregation wrote to Defendant Jacobson who referred them to the food services staff. *See* Compl. Ex. B. On Jacobson's advice, Plaintiff spoke to Food Services Administrator

3

Defendant Anthony Chu on March 20, some "two months before Fasika." Pl.'s Dep. 79:8–16.[3]
According to Plaintiff, Chu "assured [him] not to worry about [the Fasika menu]," saying: "When
May 5th comes around, all this stuff will be taken care of." *Id.* Nonetheless, on the morning of
May 5, the delivery to the chapel of the breakfast that traditionally proceeded Fasika services was
delayed. Pl.'s 56.1 Stmt. ¶¶ 12, 15. In response, Plaintiff brought the situation to the attention of
Defendant Keyser, the Acting Superintendent of Sing Sing, who resolved the "stand-off" by calling
the "[m]ess-hall by phone inside the chapel." *Id.* ¶¶ 12–14. Following breakfast, the congregation
held services and then "went to the Mess-hall to have a feast." *Id.* ¶ 15. At first, the Fasika feast
proceeded as planned as "[r]ice and vegetables were served to inmates in attendance." *Id.* After
they "finish[ed] eating and [they] reach[ed] the communion part of the celebration," however,
someone "ask[ed] one of the cooks that work[s] in the mess hall" for cornbread and grape juice.
Pl.'s Dep. 69:10–21. Defendant Coutant—who was overseeing the kitchen on May 5, 2012—
rejected the request because "cornbread and grape juice [were] not listed on the menu" for the
Fasika feast. *Id.* at 70:15–17. Plaintiff testified that members of the congregation attempted to
persuade Coutant that "if cornbread and grape juice are not listed on the menu, it probably was a
mistake by his supervisor, [who] is Anthony Chu, or it probably was an internal error made by
[the] central office." *Id.* at 70:23–71:3. According to Plaintiff, Defendant Coutant replied, "all I
kn[o]w is what my supervisor instructed me: Whatever is not listed on the menu, I must not give
it to anybody." *Id.* at 71:13–17. Plaintiff later filed a grievance and, upon adjudication, it was

---

[3] Plaintiff testified about this interaction as follows:

> Q: But Defendant Jacobson did respond to Mr. Thomas's letter, and she said
> that—or she asked you to direct menu questions to the food service administrator.
> Did you follow up with your food service administrator after that?
> A: Yes, we do [sic]. That was March 20th that you mentioned earlier.
> Q: So that was you asking Defendant Chu about the event?
> A: Yes.

Pl.'s Dep. 67:10–21.

4

determined that Defendant "Chu had inadvertently failed to provide his staff with a copy of the approved menu for the Fasika event." Pl.'s 56.1 Stmt. ¶ 25.

Plaintiff filed this action on January 29, 2013 and Defendants moved to dismiss on December 16, 2013. On September 11, 2014, this Court dismissed from this action several defendants and claims but allowed Plaintiff's causes of action on the 2011 chapel search, the 2012 Religious Holy Day Calendar, and the 2012 Fasika holiday to survive the motion to dismiss. Following discovery, Defendants filed the instant motion for summary judgment.

## STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In ruling on a motion for summary judgment, 'the district court must view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party.'" *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 78 (2d Cir. 2002) (quoting *Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir. 1996)). "Because plaintiff is proceeding *pro se*, [the Court] must consider the pleadings under a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00-CIV-1983 (LAP), 2004 WL 1824100, at *6 (S.D.N.Y. Aug. 16, 2004) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Nevertheless, proceeding *pro se* does not otherwise relieve [a] plaintiff from the usual

requirements of summary judgment," *id.*, and a court "cannot credit a plaintiff's merely speculative or conclusory assertions," *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012).

## DISCUSSION

In the Complaint, Plaintiff alleges that Defendants violated his federal rights to religious liberty and equal protection. Defendants argue that they are entitled to summary judgment because there are no genuine disputes of material fact, and judgment as a matter of law in their favor is appropriate. After viewing the summary judgment record in the light most favorable to the Plaintiff by drawing all inferences in his favor, and after according his *pro se* submissions with the leniency to which they are entitled, the Court grants Defendants' motion for summary judgment.

## I.      Religious Liberty Claims

Plaintiff first argues that Defendants violated his right to free expression of religion when they seized items from the chapel in 2011, altered the 2012 Religious Holy Day Calendar, and denied him cornbread and grape juice during the 2012 Fasika holiday. Defendants counter that none of these incidents constitutes a violation of federal law or the Constitution.

### A.      Legal Standards

Plaintiff's religious liberty causes of action derive from two independent sources: Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the Free Exercise Clause of the First Amendment.

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest."  42 U.S.C. § 2000cc–1(a).  Once "a plaintiff produces prima facie

6

evidence to support a claim alleging a violation" of RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc–2(b); *see also Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).

Similarly, a claim under the Free Exercise Clause—made actionable against state officials by 42 U.S.C. § 1983—requires that "a plaintiff must show [1] that he has a sincerely held religious belief, [2] that it was substantially burdened, and [3] that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, No. 14-581, 2015 WL 6216534, at *3 (2d Cir. Oct. 22, 2015) (citing *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014); *Ford v. McGinnis*, 352 F.3d 582, 588–94 (2d Cir. 2003)). Although the Second Circuit has noted that "[i]t has not been decided in this Circuit whether . . . a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs,'" *Holland*, 758 F.3d at 220 (quoting *Salahuddin*, 467 F.3d at 274–75), the circuit has required proof of a substantial burden in several cases without pronouncing the test generally applicable, *see Salahuddin*, 467 F.3d at 274–75; *Ford*, 352 F.3d at 592. Interpreting this precedent, another judge on this court observed that "[i]t is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives." *Vann v. Fischer*, No. 11-CV-1958 (KPF), 2014 WL 4188077, at *8 (S.D.N.Y. Aug. 25, 2014), *reconsideration denied*, No. 11-CV-1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015). This Court will do the same and "proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid." *Lopez v. Cipolini*, No. 14-CV-2441 (KMK), 2015 WL 5732076, at *15 n.4 (S.D.N.Y. Sept. 30, 2015); *accord Washington v. Chaboty*, No. 09 CIV. 9199 (PGG), 2015 WL 1439348, at

7

*9 n.12 (S.D.N.Y. Mar. 30, 2015) ("Similarly here, because [plaintiff] has not argued that the substantial burden test is inapplicable, this Court has assumed that it applies."); *Rossi v. Fishcer*, No. 13-CV-3167 (PKC), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise."); *Woodward v. Perez*, No. 12-CV-8671 (ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (applying the substantial burden test because plaintiff satisfied this threshold step); *Vann*, 2014 WL 4188077, at *8.[4]

    Although claims under RLUIPA and the Free Exercise Clause "proceed[] under a slightly different framework," *Salahuddin*, 467 F.3d at 274, the analysis is the same here in three relevant respects. First, the required "substantial burden" is identical under both provisions. *See Loccenitt v. City of New York*, No. 12-CV-948 (LTS), 2013 WL 1091313, at *3 (S.D.N.Y. Mar. 15, 2013). The Second Circuit "define[s] a substantial burden as a situation where 'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs,'" unlike imposing "inconveniences so trivial that they are most properly ignored." *McEachin v. McGuinnis*, 357 F.3d 197, 202–03 n.4, 6 (2d Cir. 2004) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)); *accord Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (applying the same substantial burden definition to RLUIPA).

---

[4] Other district courts in the Second Circuit have similarly applied the substantial burden test to prisoners' First Amendment claims. *See, e.g.*, *Smith v. Artus*, No. 07-CV-1150 (NAM), 2015 WL 9413128, at *9 (N.D.N.Y. Dec. 22, 2015) ("In the absence of guidance from a higher court, this Court applies the traditional formulation that, to prevail on a First Amendment claim, an inmate must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest."); *Hilson v. Beaury*, No. 13-CV-0606 (LEK) 2014 WL 4457132, at *6 (N.D.N.Y. Sept. 10, 2014) ("Because . . . the Second Circuit continues to apply the test, even when squarely faced with the question of its continued viability, I will assume a plaintiff must establish a substantial burden on his sincerely held beliefs to demonstrate a prima facie First Amendment free exercise claim."); *Weathers v. Rock*, No. 12-CV-1301 (NAM), 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) ("This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid."); *Williams v. Fisher*, No. 11-CV-379 (NAM), 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) ("The Court will follow *Holland* [and apply the substantial burden test].").

Second, a prisoner must exhaust any available prison grievance procedures before bringing claims in district court pursuant to either RLUIPA or the First Amendment. "As made clear by the pertinent statutory language, the exhaustion requirement embodied in the [Prison Litigation Reform Act ("PLRA")] applies not only to claims under section 1983, but also to claims asserted under other federal statutes, including the RLUIPA." *Rose v. Masiey*, No. 05-CV-8828 (LAK) (MHD), 2013 WL 4049512, at \*9 (S.D.N.Y. July 16, 2013) *report and recommendation adopted sub nom. Rose v. Muhammed*, No. 05-CV-8828 (LAK), 2013 WL 4046298 (S.D.N.Y. Aug. 7, 2013); *accord Colliton v. Gonzalez*, No. 07-CV-02125 (RJH), 2011 WL 1118621, at \*8 (S.D.N.Y. Mar. 23, 2011) (collecting cases).

Third, damages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA. *See Guillory v. Ellis*, No. 11-CV-600 (MAD), 2014 WL 4365274, at \*9 (N.D.N.Y. Aug. 29, 2014). As the Court of Appeals for the Fourth Circuit observed, "the operative word 'prohibit' in the First Amendment connotes a 'conscious act' rather than a merely negligent one,"[5] and "[a]llowing negligence suits to proceed under RLUIPA would undermine [Congress's] deference [to prison officials] by exposing prison officials to an unduly high level of judicial scrutiny." *Lovelace v. Lee*, 472 F.3d 174, 194, 201 (4th Cir. 2006). Although the Second Circuit does not appear to have addressed whether negligence can sustain a First Amendment claim outside the context of retaliatory litigation, *see Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996), the Third, Fourth, Fifth, and Tenth Circuits have found negligence insufficient, *see Schreane v. Seana*, 506 F. App'x 120, 124 (3d Cir. 2012) ("[A]n isolated act of negligence does not violate an inmate's First Amendment right to free exercise of

---

[5] The First Amendment reads in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

9

religion."); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("[T]here is no basis to conclude that any of the defendants deliberately contaminated the kosher utensils, in violation of Gallagher's right to free exercise of religion."); *Lovelace*, 472 F.3d at 201; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("Even if . . . an administrative foul-up occurred regarding the religious designation on his travel card, this would amount to no more than a claim of negligence. Such a claim would not support his allegations of a constitutional violation in this context."), and this Court is unaware of a decision of any federal court holding to the contrary. This Court shares the view of these circuit courts, as well as that of other judges in this district, that a prison official must *knowingly* place a substantial burden on a prisoner's religious beliefs to incur liability for damages under RLUIPA or the Constitution. *See Tafari v. Annets*, No. 06-CV-11360 (GBD) (AJP), 2008 WL 2413995, at \*17 (S.D.N.Y. June 12, 2008) *report and recommendation adopted,* No. 06-CV-11360 (GBD), 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008) *aff'd sub nom. Tafari v. Annetts*, 363 F. App'x 80 (2d Cir. 2010) ("[T]he denials were not intentional or malicious, but appear to at most be the result of negligence by prison officials."); *Young v. Scully*, No. 91-CV-4332 (JSM), 1993 WL 88144, at \*7 (S.D.N.Y. Mar. 22, 1993) ("There is no evidence in the record that the alleged deprivation of Plaintiff's first amendment [religious] rights involved any degree of fault by defendants . . . . Negligence alone will not carry a § 1983 action."); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 848–849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").[6]

---

[6] This view is echoed by courts in this circuit outside of this district. *See Guillory*, 2014 WL 4365274, at \*9 ("[N]egligence is not actionable under section 1983 [or RLUIPA]."); *Phillips v. LaValley*, No. 12-CV-609 (NAM), 2014 WL 1202693, at \*7 (N.D.N.Y. Mar. 24, 2014) ("This behavior was, at worst, negligence on behalf of the staff which is insufficient to establish liability under § 1983."); *Scott v. Shansiddeen*, No. 12-CV-84 (GLS), 2013 WL 3187071, at \*4 (N.D.N.Y. June 20, 2013) ("[N]o rational fact-finder could conclude that Defendant's failure to catch the mistake . . . amounted to anything more than negligence, which is not actionable under the First Amendment [or RLUIPA]."); *Odom v. Dixion*, No. 04-CV-889F, 2008 WL 466255, at \*11 (W.D.N.Y. Feb. 15, 2008) ("It is settled

### A. 2011 Chapel Search

Plaintiff argues that the 2011 seizure of "candles, pots, [f]rankincense," "myrrh," an "electric iron, and [a] computer" from the prison chapel, Pl.'s Dep. 105:13–20, constituted a violation of his rights under RLUIPA and the Free Exercise Clause, Pl.'s Mem. 14–15. In support of this allegation, Plaintiff asserts, without indicating the religious import of any particular item, that "[t]he religious items confiscated by defendant on September 2011 are central and critical to the Rastafarian temple worship (ritual) on the Sabbath and without these religious items the Sabbath worship have to be cancel," [sic]. Pl.'s Decl. ¶ 5. Plaintiff did not, in his filings or at his deposition, elaborate on this conclusory statement by, for example, differentiating between the items seized, identifying the significance of the items to the Rastafarian religion, or explaining why the Sabbath would have to be cancelled in their absence. As a "pure legal conclusion . . . is entitled to no weight at summary judgment," *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 96 (2d Cir. 2015), Plaintiff's sole conclusory statement about the seizure's burden on his religious beliefs cannot alone sustain his claim, *see Jackson v. Boucaud*, No. 08-CV-1373 (TJM) (DEP), 2009 WL 6066799, at *6 (N.D.N.Y. Dec. 31, 2009) *report and recommendation adopted*, No. 08-CV-1373 (TJM), 2010 WL 933744 (N.D.N.Y. Mar. 15, 2010) (dismissing plaintiff's claim because he failed to "explain why denial of this interpretative book constituted a deprivation that imposed anything more than a *de minimis* burden upon his religious practice"); *Ochoa v. Connell*, No. 05-CV-1068 (GLS), 2007 WL 3049889, at *7 (N.D.N.Y. Oct. 18, 2007) (rejecting a claim that interruption of a prayer was a substantial burden because plaintiff "gives no explanation as to the type of prayer . . . and/or the importance of the particular prayer.").

---

that mere negligence on the part of prison officials is insufficient to establish liability under § 1983 [for a violation of religious liberty].").

A review of the record confirms that the seizure was not a substantial burden. Although Plaintiff does not raise it, the only inference regarding the significance of any of the seized items can be drawn from the final decision on Plaintiff's grievance from the Inmate Grievance Program Central Office Review Committee, which was submitted as an exhibit to Plaintiff's complaint. *See* Compl. Ex. F. In it, officials noted that "inmates cancelled their own services because they did not have an iron for the robes. The facility administration took appropriate action to provide an iron as needed and there have been no further issues." Compl. Ex. F.[7] To the extent Plaintiff could assert that "the robes" are central to Rastafarianism and the seizure of the electric iron used for their upkeep was a substantial burden, this argument fails. "A substantial burden is more than a mere inconvenience but rather involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs." *Gill v. Defrank*, No. 98-CV-7851 (NRB), 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000) *aff'd*, 8 F. App'x 35 (2d Cir. 2001) (internal citation omitted); *accord Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. 2014). In *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009), for example, the Eighth Circuit considered whether a prison's refusal to allow an inmate to keep a tape recorder that he argued was necessary for the practice of his religion constituted a substantial burden on his religious expression. *Id.* at 657. It held that RLUIPA and the Free Exercise Clause do "not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise." *Id.* Here, the absence of the iron—or any of the other seized items the significance of which is unclear—did not force Plaintiff to modify his behavior or violate his beliefs. Summary judgment is therefore granted because this Court has been provided no non-conclusory basis to find that the absence of

---

[7] The record reveals that an iron was provided in the chapel for use by all denominations soon after the chapel search. *See* Decl. Quandera T. Quick, Ex. A (Memorandum from William Keyser to All Staff (Nov. 8, 2011) ("Effective immediately, all religious denominations will share one (1) iron in the Chapel area.")).

12

the items seized in the 2011 search "significantly inhibit[ed Plaintiff's] religious expression, meaningfully curtail[ed] his ability to adhere to his faith, or deprive[d] him of a reasonable opportunity to engage in that religious activity." *Van Wyhe*, 581 F.3d at 657.

### B. 2012 Religious Holy Day Calendar

Defendants also seek summary judgment on Plaintiff's claims regarding the 2012 Religious Holy Day Calendar, arguing that Plaintiff did not exhaust the available administrative remedies as required to recover under RLUIPA and the First Amendment through 42 U.S.C. § 1983. Defs.' Mem. 16; *see also Rose*, 2013 WL 4049512, at \*9. In Plaintiff's brief, he acknowledges that he "did not file a grievance regarding this issue," but argues that the omission is not dispositive because it "does not deprive this Court of jurisdiction." Pl.'s Mem. 16.

Plaintiff's claims are barred by the PLRA, which "provides that '[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (quoting 42 U.S.C. § 1997e(a)). As the Second Circuit has instructed, "the PLRA's exhaustion requirement is mandatory" unless "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (internal citations and quotations omitted). None of these exceptions are presented here as Plaintiff knew of and frequently used the prison's administrative remedies to grieve alleged violations of his religious liberty, *see* Compl. Exs. C, E, F, and Defendants raised the exhaustion defense in their

13

briefing, *see* Defs.' Mem. 16.  Defendants' motion for summary judgment of the Calendar claims is therefore granted.

### C.    Fasika Communion

Lastly, Plaintiff contends that his inability to obtain cornbread and grape juice on May 5, 2012 constituted a violation of his rights.[8]  Defendants argue that they are entitled to summary judgment on these claims because Defendants acted negligently, a state of mind for which liability cannot be imposed under RLUIPA or the Free Exercise Clause.  As there is no genuine factual dispute that Defendants acted—at most—negligently, the Court agrees that these claims must be dismissed.

Although Plaintiff asserts that "evidence indicates intentional conduct," Pl.'s Mem. 9, the facts in the record confirm that the denial of cornbread and grape juice on May 5, 2012 was the result of errant paper work and a miscommunication between Defendant Chu and Defendant Coutant.  The conclusion that these oversights resulted from, at most, negligence is evident from Food Services Administrator Chu's declaration that he "did not intentionally deprive [P]laintiff of the missing food items," Decl. of Anthony Chu ¶ 3, and Plaintiff's own deposition testimony. Plaintiff testified that Chu told him that he intended to provide the requested items in 2012—as the prison has in every other year—and even assured Plaintiff that "[w]hen May 5 comes around, all this stuff will be taken care of."  Pl.'s Dep. at 76:25–77:3, 79:8–16.  While Defendant Chu neglected to note the need for cornbread and grape juice in addition to the feast of rice and vegetables in the special Fasika menu, *see id.* at 70:22–71:3; Pl.'s 56.1 Stmt. ¶ 25, his error was not intentional.  As Plaintiff acknowledged at his deposition, he and his fellow congregants told

---

[8] According to Plaintiff, Defendants Jacobson, Chu, Coutant, and Keyser were personally responsible for the deprivation of grape juice and cornbread. Pl.'s Mem. 13.  Plaintiff recognized during his deposition testimony, however, that "in that instance right there, [Keyser] wasn't involved as far as preventing us from receiving the proper items for our holy day."  Pl.'s Dep. 104:4–17.

14

prison officials that "if cornbread and grape juice are not listed on the menu, it *probably was a mistake* by [the food service staff] supervisor . . . Anthony Chu." *Id.* at 70:23–71:3 (emphasis added).

The record is further clear that Defendant Coutant—who was running the kitchen in Chu's absence on May 5, 2012—did not purposefully violate Plaintiff's rights when he did not provide cornbread and grape juice. Not only did Coutant declare that he "did not intentionally deprive [P]laintiff of the missing food items," Decl. of Federick Coutant, Jr. ¶ 3, but Plaintiff admits that Coutant's refusal was reasonable in the circumstances. Plaintiff testified that Coutant refused to provide cornbread and grape juice because he was instructed "[w]hatever is not listed on the menu, [he] must not give it to anybody." *Id.* at 71:13–17. At his deposition, Plaintiff twice conceded that Defendant Coutant could not reasonably have been expected to distribute off-menu food items to inmates, in contravention of the pertinent paperwork and the instructions of his supervisor, based solely on the prisoners' insistence that they were entitled to special treatment. He testified as follows:

> Q: So a DOCCS employee is supposed to follow your direction as an incarcerated inmate?
> A: Honestly, no; . . .
> Q: Then [Coutant's] supposed to follow the direction of an inmate?
> A: I guess no.

Pl.'s Dep. 106:5–107:14. In light of this deposition testimony regarding Defendant Coutant's reasonable refusal to violate protocol, together with Plaintiff's recognition that this was "probably a mistake," *id.* 70:23–71:3, this Court concludes that no reasonable juror could find that the Defendants' conduct amounted to anything more than negligence, which is insufficient for recovery under RLUIPA or the First Amendment. *See Scott*, 2013 WL 3187071, at *4 ("[N]o rational fact-finder could conclude that Defendant's failure to catch the mistake . . . amounted to

15

anything more than negligence, which is not actionable under the First Amendment." (internal quotation omitted)).

In any event, Plaintiff's inability to obtain cornbread and grape juice was not a substantial burden on his religious liberty. Accepting that "Fasika[] is unique in its importance within Rastafarian[ism]," Pl.'s Mem. 6, and that the Fasika feast "is not relevant without grape juice and cornbread," Pl.'s Dep. 73:22–74:17, Defendants' failure to provide these items did not substantially burden Plaintiff's religious liberty. Although the inability to take communion with cornbread and grape juice may have altered Plaintiff's normal Fasika practice, it did not constitute a *substantial* burden because communion makes up only one aspect of the day-long Fasika celebration. According to Plaintiff, he requested and was provided a breakfast delivered to him in the chapel, *id.* at 80:4–9, space to conduct a religious service for his congregation, *id.* at 75:10–13, and a feast of vegetables and rice that Plaintiff states is equal in importance for observance of Fasika to the taking of communion, *id.* at 68:25–69:6, 75:3–9 (explaining that a lack of the "mandatory vegetable . . . would forfeit the event also"). In light of all the prison did to facilitate the Fasika celebration, the failure to provide cornbread and grape juice was a de minimis burden on Plaintiff's religious freedom.

In arguing otherwise, Plaintiff relies on the Second Circuit's decision in *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003). In that case, a prison policy prevented an inmate housed in a unit reserved for prisoners with disciplinary problems from participating in a Muslim holiday. *Id.* at 586–87. The circuit rejected the defendants' argument that the burden imposed by the policy was insubstantial because the holiday was not religiously mandated, instead finding it satisfactorily "unique in its importance within Islam." *Id.* at 594 n.6 (citing *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999)). Unlike in *Ford*, however, where the prisoner was wholly prevented

from observing the holiday in its entirety, *id.* at 586–87, Plaintiff here participated in every aspect of Fasika bar communion.

Courts in this district have refused to impose liability where a prisoner is denied a limited number of meals that conform to his dietary restrictions, distinguishing such de minimis burdens from the impermissible deprivation described in *Ford*. *See, e.g.*, *JCG v. Ercole*, No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at *23 (S.D.N.Y. Apr. 24, 2014) *report and recommendation adopted*, No. 11-CV-6844 (CM), 2014 WL 2769120 (S.D.N.Y. June 18, 2014) ("The denial of one meal does not substantially burden Plaintiff's rights under the Free Exercise clause as it constitutes no more than a *de minimis* harm."); *Leach v. New York City*, No. 12-CV-3809 (PAC), 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) ("The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a *de minimis* imposition falling far short of the substantial burden requirement."); *Tafari*, 2008 WL 2413995, at *16 ("[T]his single in transit meal, by itself, does not constitute a violation under the First Amendment or RLUIPA, as any violation was *de minimis*."); *Thomas v. Picio*, No. 04-CV-3174 (KMW), 2008 WL 820740, at *6 n.8 (S.D.N.Y. Mar. 26, 2008) ("[A]ssuming *arguendo* that Plaintiff was denied kosher meals on February 8, 2001, the Court finds that such a denial is not a substantial burden."). The absence of the Fasika communion in 2012[9]—one aspect of a more extensive Fasika celebration—is more akin to those cases "in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden" than those cases, like *Ford*, in which the prisoner suffered complete exclusion from participation in a religious holiday. 352 F.3d at 594 n.12.

---

[9] Plaintiff acknowledges that 2012 is the only year in which he was prevented from obtaining the cornbread and grape juice required for Fasika communion. Pl.'s Dep. 76:25–77:3 ("[T]his standard menu has been established within DOCCS for the past 18, 19, 20 years.").

17

As Plaintiff's inability to obtain cornbread and grape juice was the result of inactionable negligence and did not substantially burden his rights under RLUIPA or the Constitution, Defendants' motion for summary judgment of the Fasika claims is granted.

## II.   Equal Protection Claim

Finally, Defendants seek summary judgment on Plaintiff's equal protection claim. "A claim of violation of equal protection by selective enforcement of the law generally has two elements: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Snyder v. Pugliese*, 144 F. App'x 174, 175 (2d Cir. 2005) (quoting *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). Plaintiff asserts that his right to equal protection was violated because Defendants Chu and Coutant favored adherents to Judaism over Rastafarians in refusing to dispense any available grape juice on Fasika "even though the Jewish holiday was about two weeks after May 5[,] 2012." Pl.'s Mem. 20. The sole support offered by Plaintiff for this accusation is Defendant Coutant's comment that "cornbread and grape juice are Jewish customs," *id.*, which, Plaintiff argues, "shows Coutant['s] state of mind," Pl.'s 56.1 Stmt. ¶ 34. This statement, however, while it may have been misguided, does not alone raise an inference of discrimination. Unlike in *Orafan v. Goord*, 411 F. Supp. 2d 153 (N.D.N.Y. 2006) *vacated and remanded sub nom. Orafan v. Rashid*, 249 F. App'x 217 (2d Cir. 2007), cited by Plaintiff, Plaintiff here presents no evidence that Defendant Coutant exhibited a preference for any religion or displayed discriminatory animus towards any other. *See id.* at 163 (describing a Sunni cleric who "told Shiite inmates that their religious beliefs were wrong"). Plaintiff's equal protection claim is thus dismissed.

18

**CONCLUSION**

As no genuine disputes of material fact prevent this Court from finding in favor of Defendants as a matter of law, and Plaintiff cannot meet his burden on his asserted RLUIPA, free exercise, and equal protection claims, Defendants are entitled to summary judgment. Defendants' motion is granted and the action is dismissed. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:    March 1, 2016
          New York, New York

_____
Ronnie Abrams
United States District Judge